IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LUIS JARAMILLOS TREJOS,

       Plaintiff,

vs.                          CASE NO. 1:17-cv-32-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("SSDI") pursuant to Title II of the Social Security Act. (ECF No. 1.) The Commissioner has answered (ECF No. 8), and both parties have filed briefs outlining their respective positions. (ECF Nos. 21 & 22.) For the reasons discussed below, it is recommended that the Commissioner's decision should be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSDI on July 6, 2012, , alleging a disability onset date of August 10, 2005. (R. 174, 347–53.) Plaintiff alleged he could not work due to epileptic seizures, kidney cancer,

obsessive depression, stomach ulcer, thyroid problems, asthma, and an

inflamed prostate. (R. 403.) His application was denied initially and upon

reconsideration. Following a hearing on February 10, 2014, an

administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff.

(R. 184–96.) The Appeals Council, however, granted Plaintiff's request for

review, vacated the ALJ's decision,[1] and remanded the case to the ALJ for

further proceedings. (R. 198.)

Accordingly, another ALJ— Stephen C. Calvarese—held a second

hearing on January 14, 2016. (R. 38–68.) During the hearing Plaintiff

amended his disability onset date to July 23, 2010. (R. 41.) On February

24, 2016, ALJ Calvarese issued a decision unfavorable to Plaintiff. (R.

16–37.) The Appeals Council denied Plaintiff's request for review. (R. 1–6.)

Plaintiff then filed the instant appeal on February 13, 2017. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

---

[1] There was no documentation in the record showing that medical evidence received after the hearing had been proffered to Plaintiff. (R. 198.) "Pursuant to HALLEX I-2-7-1, the Administrative Law Judge must proffer all post-hearing evidence unless the evidence was submitted by the claimant or the claimant's representative, and there is no other party to the hearing; the claimant has knowingly waived her right to examine the evidence; or the Administrative Law Judge issues a fully favorable decision." (*Id.*) The record did not show that any of the exceptions to proffer were present. (*Id.*)

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human

Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

    The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[2] The

impairment must be severe, making Plaintiff unable to do his previous

work, or any other substantial gainful activity which exists in the national

economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

    The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. § 404.1520. The claimant has the burden of proving the existence

of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936

F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a

---

[2] All further references to 20 C.F.R. will be to the 2017 version, unless otherwise specified.

substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[3]

---

[3] In *Doughty* the court explained this burden shifting as follows:

## III.  SUMMARY OF THE RECORD

### A.  Medical Evidence

Plaintiff has a history of epilepsy and degenerative disc disease. He underwent an anterior fusion of L4–L5 and L5–S1 in December 2003 to treat disc degeneration with secondary foraminal stenosis. (R. 615–24.) Imaging in November 2004 revealed well-seated hardware unchanged in appearance, preserved disc height in the upper lumbar spine, negative malalignment, and negative fracture. (R. 618.)

Plaintiff was discovered to have a small left renal mass in January 2010. (R. 512.) He thereafter failed to return for scheduled urologic follow-ups for over six months and also failed to have an interval CT urogram as directed.

Plaintiff presented to the Alachua County Health Department ("ACHD") in March 2010 after being hospitalized for a heart attack and

---

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Id.* (internal citations omitted).

seizures. (R. 581.) He denied chest pain and seizures after hospitalization.

Examination revealed scattered expiratory wheezing in his lungs, but no

rales. He also had regular heart rate and rhythm and no murmurs, rubs, or

gallops. Plaintiff was alert and oriented, had intact cranial nerves, normal

deep tendon reflexes, and no motor or sensory deficits. He was assessed

with heart attack by history, epilepsy with sub-therapeutic dilantin level,

severe hyperlipidemia, moderate persistent asthma, left renal mass

pending surgery, depression, type 2 diabetes, uncontrolled hypothyroidism,

and chronic lumbalgia secondary to degenerative disc disease. He was

prescribed aspirin, dilantin for epilepsy, simvastatin, two inhalers, and

instructed to take fish oil daily, change his diet, and avoid fried foods.

Plaintiff returned to the ACHD in June 2010 with complaints of low

back pain and urinary frequency. (R. 597.) Examination revealed expiratory

wheezing in Plaintiff's lungs. Plaintiff continued to complain of low back

pain in July 2010, reporting that tramadol did not help. (R. 595.) His lungs

were clear to auscultation. Straight leg raise was positive on the left side.

Plaintiff was prescribed celebrex, baclofen, and neurontin.

Plaintiff eventually returned to Southeastern Urology on July 23,

2010. (R. 514.) Plaintiff's wife reported that Plaintiff had a history of heavy

alcohol consumption with approximately four beers per day. Plaintiff reported no chest pain, shortness of breath, malaise, or weight loss. Examination was largely normal and a chest x-ray negative. Cristoforo Cama, M.D., instructed Plaintiff to undergo an interval renal profile and interval imaging. Dr. Cama informed Plaintiff that if he fails to keep his future appointments he will be discharged and need to find an alternative urologist.

Plaintiff's lumbar pain was still present in August 2010. (R. 594–95.) Examination revealed bilateral wheezes in his lungs. Plaintiff was assessed with bronchial asthma and chronic obstructive pulmonary disease ("COPD"), and prescribed an inhaler.

A CT scan of Plaintiff's abdomen and pelvis in August 2010 revealed an upper anterior left renal cortical neoplasm, with extensive malignancy vascular enhancement, benign-appearing cysts on both kidneys, bilateral urolithiasis, moderate enlargement of benign-appearing prostate gland, and mild sigmoid diverticulosis. (R. 512–13.) Physical examinations at his next two follow-ups with Southeastern Urology in August were largely normal. (R. 508, 510.) Plaintiff advised that he wished to proceed with open left partial nephrectomy. (R. 509, 511.)

Accordingly, Plaintiff underwent left partial nephrectomy in September 2010. (R. 500–05.) At his surgery follow-up in October 2010, Dr. Cama noted that Plaintiff had done extremely well, although continued to require narcotics. (R. 494.) Physical examination was largely normal, including a regular heart rate and rhythm, clear lungs, and no focal neurological deficits. Dr. Cama refilled Plaintiff's prescription for percocet and advised Plaintiff to avoid heavy strenuous weight lifting activities.

Plaintiff presented to ACHD on December 3, 2010, reporting stomach pain, nausea, night sweats, fatigue, loose and bloody stools. (R. 594.) He also claimed to have anxiety and depression. Plaintiff said he ran out of all his medications two months prior after being hospitalized and undergoing surgery for kidney cancer. Plaintiff admitted, however, to still drinking one or two beers everyday. Examination revealed faint jaundice, expiratory wheezing in Plaintiff's lungs.

Plaintiff presented to the emergency department at North Florida Regional Medical Center later that day for his abdominal pain, nausea, and diarrhea. (R. 453–60.) Plaintiff ambulated to the examination room, alert, oriented, and in no acute distress. His respirations were not labored and his breath sounds within normal limits. His abdomen was soft on

examination but tender. Bowel sounds were within normal limits and no emesis was noted. There was, however, blood present in the stool. Plaintiff had normal range of motion in his extremities and no lower extremity edema. He was oriented and displayed no signs of motor or sensory deficits. An abdomen CT scan revealed no significant abnormalities. Plaintiff was assessed with diarrhea and lower gastrointestinal bleed and discharged later that day in stable condition.

Plaintiff returned to Southeastern Urology several days later for another follow-up. (R. 493.) He reported still requiring narcotics, despite tapering usage. Physical examination was largely normal, including a regular heart rate and rhythm, clear lungs, and no focal neurological deficits. Dr. Cama gave Plaintiff a prescription for flomax, one last prescription for percocet, and counseled Plaintiff about narcotic dependence. Within several months, Plaintiff's urine cytology was negative for high grade malignancy/carcinoma. (R. 490.)

In February 2011 Plaintiff continued to complain of abdominal pain, diarrhea, and heartburn. (R. 580.) His lungs had bilateral mild wheezing and his abdomen slight tenderness. Plaintiff was assessed with diarrhea, gastroesophageal reflux disease, asthma, and hypothyroidism.

X-rays in July 2011 revealed a three level lumbosacral fusion from

L4-S1 with interpost cages, as well as evidence of an L5 laminectomy. (R.

476–77.) There were no complicating fissures seen on the x-rays.

Examination of the spine showed no deformity but Plaintiff had tenderness

over the L5-S1 joint and restricted range of motion. Plaintiff was treated

with Tylenol with codeine and referred for injection techniques.

ACHD records note that in January 2012, Plaintiff had not responded

to attempts to contact Plaintiff for medication refills. Plaintiff's case was

therefore closed. The records disclose that if Plaintiff wished to access

volunteer medical care in the future he would need a new referral. (R. 571.)

Later that year, Plaintiff brought copies of his medications to the ACHD,

asking for $4.00 versions of the medications. (R. 548.) The nurse noted

that some of the medications were already on the $4.00 list.

## B.  Other Evidence

Plaintiff continued working as a janitor at a church for more than a

year after his back surgery in 2003. (R. 358–59.)

Now, however, Plaintiff says he has constant, chronic pain. (R. 412.)

He takes Aleve and Codeine, which provide little relief, make him groggy,

and upset his stomach. He dresses and bathes himself but cannot bend

down to clean his feet, has to dress while he is in bed, and needs help tying his shoes. (R. 412, 441.) He is able to feed himself and use the toilet without help. (R. 415.) He does not prepare his own meals, however, because he cannot stand or remember recipes. (R. 416.) He cannot do housework, laundry, or go shopping. (R. 412.) He has to take medication to sleep and he sleeps very little.

Plaintiff cannot drive because of his epileptic attacks. (R. 413.) He has grand mal seizures, during which his body shakes, he loses muscle tone and falls to the floor, and loses consciousness for approximately five to seven minutes. (R. 425–26.) He takes Dilantin daily, however, which prevents and controls his seizures. Plaintiff also cannot do any yard work, engages in no social activities, and does no home maintenance. (R. 413.) He sits for the majority of the time watching television, cannot stand for more than five minutes, and cannot walk for more than twenty feet. Plaintiff's wife feeds and walks their pets. (R. 415.) He gets along with his wife and kids, but no one else. (R. 419.) Nevertheless, he gets along well with authority figures. (R. 420.)

## C.  Hearing Testimony

Plaintiff was sixty-four years old at the time of the hearing. (R. 46.)

He completed high school in Cuba and two semesters of college in the United States. (R. 44.) He can do basic math and understands English but can only read and write some English. (R. 45–46.)

Between July 2010 and December 2010 Plaintiff had back pain, stomach problems, and problems with his asthma/COPD. (R. 52–53.) Plaintiff's COPD, however, was not as bad in 2010 as it is presently. (R. 53.) At the relevant time it was difficult for Plaintiff to walk because of the pain in his back. Plaintiff was also depressed and drank heavily, around four to five beers a day. (R. 53, 56.) He was also not eating well because of his stomach problems and lost around fifteen to twenty pounds. (R. 53.) Dr. Cama had prescribed Plaintiff pain medication after surgery for kidney cancer, which Plaintiff took as prescribed. (R. 55.) Doctors told Plaintiff to do very little lifting and Plaintiff complied. (R. 53–56.)

Plaintiff's wife helped him on a daily basis with things like bathing, dressing, and putting on shoes. (R. 51, 54.) He could not climb stairs well and could not bend over at the waist. During the relevant time period he used crutches and a cane. (R. 55.) Plaintiff had the crutches from when his son broke a foot and the cane from when Plaintiff had back surgery in 2003. (R. 57.) He carried the cane in his right hand. Plaintiff's left leg was

weaker and had deteriorated after the back surgery. (R. 51, 57.) Plaintiff

could walk at most twenty to thirty meters very slowly. (R. 55.)

Paul Dolan, a vocational consultant, also testified at the hearing as a

vocational expert. (R. 58.) Mr. Dolan ("the VE") testified that Plaintiff's past

work history included working as a production assembler, material handler

(or alternatively utility worker), janitor, and electrician apprentice. (R.

58–61.) The ALJ asked the VE whether a hypothetical claimant with

Plaintiff's RFC could perform Plaintiff's past relevant work. (R. 63–64.) The

VE testified that the hypothetical claimant could perform Plaintiff's past

work as a production assembler. (R. 64.)

## D.  Opinion Evidence

David Guttman, M.D., a state agency physician, completed a physical

residual functional capacity assessment for Plaintiff on October 8, 2012.

(R. 611–13.) Dr. Guttman opined that Plaintiff can occasionally lift and/or

carry fifty pounds, and frequently lift and/or carry twenty-five pounds.

Plaintiff can stand and/or walk for six hours in an eight-hour workday and

sit for six hours in an eight-hour workday. He can never climb

ladders/ropes/scaffolds and only frequently stoop, but otherwise has no

postural limitations. Plaintiff must avoid all exposure to hazards and avoid

concentrated exposure to vibration, fumes, odors, dusts, gases, and poor

ventilation. He has no other environmental limitations. Plaintiff also has no

manipulative, visual, or communicative limitations.

## E.  The ALJ's Findings

The ALJ determined that Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2010. (R.

24.) He further determined that Plaintiff had not engaged in substantial

gainful activity from July 23, 2010, through his date last insured. The ALJ

found that Plaintiff had the following severe impairments: degenerative disc

disease of the lumbar spine and asthma/chronic obstructive pulmonary

disease. At step three of the sequential evaluation, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met

or medically equaled one of the listed impairments. (R. 27.)

With respect to Plaintiff's residual functional capacity ("RFC") at step

four of the sequential evaluation, the ALJ determined that Plaintiff retained

the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c),

with additional limitations. (R. 28.) The ALJ then found Plaintiff to be

capable of performing his past relevant work as a production assembler.

(R. 31.) Accordingly, the ALJ concluded that Plaintiff had not been under a

disability from July 23, 2010, through December 31, 2010.

## IV.  DISCUSSION

Plaintiff raises two issue on appeal: (1) whether the ALJ erred in his credibility determination; and (2) whether the ALJ erred in assessing Plaintiff's RFC. (ECF No. 21.)[4]

## A.    Substantial evidence supports the ALJ's credibility finding.

At step four the ALJ must assess the claimant's RFC and his ability to return to past relevant work. § 404.1520(a)(4)(iv). The ALJ must take the claimant's medical evidence and other evidence into consideration in his RFC analysis. § 404.1520(e). If a claimant cannot return to his past

---

[4] Plaintiff's brief begins with four pages of discussion referencing a study of Social Security Disability Litigation in the Federal Courts, prepared in July 2016, for consideration of the Administrative Conference of the United States. The purpose of the report was to make recommendations for improvement of the Social Security Disability process from the agency level through Federal District Court adjudication of cases. One of the goals was to cause the federal court remand rate to drop. As the report points out a "variety of factors determine the rate at which claimants prevail in the district courts: claim quality; the contours of the multi-layer process of agency review; claimant's beliefs about their chances of succeeding in the district courts; the quality of the claimant and agency lawyering; variation in applicable circuit law; and judicial preferences and choices."  Gelbach, Jonah B. And Marcus, David, "A Study of Social Security Disability Litigation in the Federal Courts" (2016) *Faculty Scholarship*, Paper 1668. http//scholarship.law.upenn.edu/faculty_scholaship/1668. I am well aware of the Report and the purpose of the Report, through my service as a member of the Magistrate Judges' Advisory Group, which has reviewed and discussed the Report. The Report, however, has nothing to do with this case or the Plaintiff's claims in this case nor is the Report useful or instructive to the determination of Plaintiff's claim in this case. The time of Plaintiff's counsel would better be spent focusing on why the ALJ's decision should be reversed rather than wasting four pages of his brief with argument and information which does nothing to advance his client's position.

relevant work, the ALJ moves onto step five to determine if the claimant can adjust to other work. *Id.*; *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

Under the Eleventh Circuit's pain standard, a claimant may establish his disability through his own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir. 1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *See Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable

impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. §§ 404.1529(c)(1)–(2). The ALJ may consider other factors, such as: (1) The claimant's daily activities; (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) Any precipitating and aggravating factors; (4) The type, dosage, effectiveness, and side effects of the claimant's medication; (5) Any treatment other than medication; (6) Any measures the claimant used to relieve his pain or symptoms; and (7) Other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms. § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. § 404.1529(c)(4).

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate

reasons for doing so, or the record must be obvious as to the credibility

finding. *Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite

particular phrases or formulations, broad findings that a claimant was

incredible and could work are, alone, insufficient for the Court to conclude

that the ALJ considered the claimant's medical condition as a whole. *Id*. at

1562. The ALJ's articulated reasons must also be supported by substantial

evidence. *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1532

(11th Cir. 1991). The Court will not disturb a properly articulated credibility

finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

The failure to articulate reasons for discrediting a claimant's subjective

testimony, however, requires that the testimony be accepted as true and

becomes grounds for remand where credibility is critical to the outcome of

the case*. Id.*

The ALJ is not required to recite the pain standard, but he must make

findings that indicate the standard was applied. *Cooper v. Comm'r of Soc.*

*Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013). Whether objective medical

impairments could reasonably give rise to the alleged pain is a question of

fact for the Commissioner and the district court's review is limited to

ensuring substantial evidence supports the Commissioner's finding. *Landry*

*v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

In determining Plaintiff's RFC at step four, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 31.)

In finding Plaintiff's statements not entirely credible, the ALJ properly considered Plaintiff's statements under the Eleventh Circuit's pain standard. The ALJ considered Plaintiff's medically determinable impairments, including lumbar degenerative disc disease with status post lumbar fusion, seizures, and chronic obstructive pulmonary disease/asthma, but found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms to be not entirely credible. Contrary to Plaintiff's assertion, the ALJ also elaborated and gave adequate reasons as to why he found Plaintiff's statements not to be entirely credible.

For starters, the ALJ considered Plaintiff's activities of daily living in assessing Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3) (in addition

to the objective medical evidence and the claimants statements, the ALJ

may consider other factors such as the claimant's daily activities). The ALJ

noted that despite Plaintiff's assertion that he has a number of functional

limitations, has difficulty bathing and tying his shoes, cannot do yard work,

housework, drive, or shop, and does not like to leave his home due to his

pain, he admitted that he could shower and get dressed, got along with his

wife and children, got along with authority figures, and watched television.

(R. 29.) The ALJ also pointed out that despite Plaintiff's complaints of

disabling back pain following his lumbar fusion, Plaintiff nonetheless was

able to continue working as a janitor—the job he performed prior to the

lumbar fusion—for over a year at substantial gainful activity following the

lumbar fusion. (*Id.*)

    The ALJ also relied upon Plaintiff's noncompliance with medications

and failure to attend scheduled medical appointments in assessing

Plaintiff's credibility. (*Id.*); *see* §§ 404.1529(c)(3)(iv)–(vi) (permitting

consideration of medications taken to alleviate pain or other symptoms,

other treatments, and any measures used to alleviate or relieve pain); 20

C.F.R. § 404.1530(b) (refusal to follow prescribed medical treatment

without good reason will preclude a finding of disability). Plaintiff correctly

points out that lack of insurance and an inability to pay for medications and

treatment are not in and of themselves reasons to discount a claimant's

subjective statements. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th

Cir. 1988). The record, however, is unclear as to when Plaintiff could and

could not afford prescriptions and provider visits. Notably, between July

and December 2010 Plaintiff was drinking anywhere from one to four beers

each day. Moreover, Plaintiff had access to some $4.00 medications and

volunteer healthcare through the ACHD. In any event, Plaintiff's non-

compliance was just one of several factors the ALJ considered in analyzing

Plaintiff's credibility. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th

Cir. 2003) (ALJ was not required to determine whether claimant was

financially able to afford treatment when disability decision was not

significantly based on a finding of non-compliance).

The ALJ also relied upon and discussed the substantial objective

medical evidence to support his credibility finding. *See Dyer v. Barnhart*,

395 F.3d 1206, 12111 (11th Cir. 2005) ("[T]here is no rigid requirement that

the ALJ specifically refer to every piece of evidence in his decision, so long

as the ALJ's decision . . . is not a broad rejection which is 'not enough to

enable the district court or this Court to conclude that the ALJ considered

her medical condition as a whole.").  A lack of medical reports evidencing

exertional limitations suggests that a claimant's impairments may not be as

limiting as alleged. *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211

(M.D. Ala. 2002) (finding that substantial evidence supported the ALJ's

conclusion that plaintiff's impairments were not severe because there were

no reports indicating exertional limitations).

    With respect to Plaintiff's degenerative disc disease with status post

lumbar fusion, the ALJ noted that diagnostic images in 2004, after surgery,

found the hardware well-seated in unchanged appearance with disc height

preserved in the upper lumbar spine and no malalignment or fracture. (R.

30.)  The images in 2012 After the date last insured) noted as a result of

the surgery there was fusion from L4-S1 with interpost cages and an L5

laminectomy, no complicating fissures were seen. Plaintiff was treated with

Tylenol with codeine. And prior to Plaintiff's date last insured physical

examinations were largely normal.

    As to Plaintiff's seizures, Plaintiff was found to have a sub-

therapeutic Dilantin level following a seizure. Otherwise, the record is

devoid of any other seizures and Plaintiff admits that when he takes

Dilantin daily, the Dilantin controls and prevents seizures. (R. 426.) This

suggests that Plaintiff's seizures are properly controlled with medication. Additionally, despite Plaintiff's COPD/asthma, physical examinations were often normal and Plaintiff required no emergency treatment for his COPD/asthma.

Finally, the ALJ relied upon Dr. Guttman's expert opinion, to which he gave significant weight. *See* § 404.1529(c)(1) (explaining that in evaluating the intensity and persistence of a claimant's symptoms, the Commissioner considers all of the available evidence, including the "medical opinions of your treating source and other medical opinions"). The ALJ noted that Dr. Guttman considered all of the objective facts at the time he rendered his opinion. (R. 30–31.) Additionally, despite not having Plaintiff's testimony to consider, the ALJ explained that Plaintiff's testimony relating to his activities of daily living was significantly consistent with Dr. Guttman's opinion. For example, Plaintiff admits that he spends most of his day sitting and although he claims he cannot walk for more than twenty to thirty meters, he did not testify about having difficulties standing. There was also no testimony pertaining to difficulties with manipulation, vision, communication, or environment. The ALJ further explained that Dr. Guttman's opinion was generally consistent with the aforementioned

objective medical evidence.

The ALJ has wide latitude in evaluating the weight of evidence,

particularly the credibility of witnesses. *Owens v. Heckler*, 748 F.2d 1511,

1514 (11th Cir. 1984). Despite Plaintiff's impairments and pain, the ALJ

pointed to adequate reasons that suggest Plaintiff's symptoms are not as

limiting as alleged. Accordingly, substantial evidence supports the ALJ's

credibility determination. Where, as here, the ALJ has articulated adequate

reasons for his credibility determination it is not the province of this Court

to second guess the ALJ's conclusions.

## B.    Substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform medium work with additional limitations.

After determining that Plaintiff's statements about the limiting effects

of his symptoms and pain were not entirely credible, the ALJ determined

that Plaintiff has the RFC to perform medium work with additional

limitations:

> The person can stand, walk, and sit for 6 hours each in an 8
> hour workday. The person can frequently stoop but never climb
> ladders. The person should avoid concentrated exposure to
> vibrations, fumes, odors, dust, gases, and poor ventilation. The
> person should avoid all hazards (work at heights, driving,
> dangerous machinery, or machinery).

(R. 28.)

A claimant's RFC is the most a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is based, not only on medical opinions, but also the ALJ's review of all relevant evidence in the record. *Id.*; 20 C.F.R. § 404.1546.

Under SSR 83-10, "medium work" is defined as:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform medium work with additional limitations. In addition to the objective medical evidence previously discussed, Plaintiff repeatedly denied chest pain and seizures and examinations repeatedly revealed a regular heart rate and rhythm. Although examinations occasionally revealed expiratory wheezing in his lungs, his lungs were clear at other times without rales and Plaintiff reported no shortness of breath. Chest x-rays were negative just prior to the relevant time period. Plaintiff demonstrated normal ranges of motion in his extremities in December 2010. Examinations repeatedly revealed no motor or sensory deficits.

Additionally, none of Plaintiff's treating physicians enumerated any functional limitations aside from normal restrictions immediately following kidney removal in September 2010. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012) (quoting *Phillips*, 357 F.3d at 1240)) ("When determining a claimant's RFC, the ALJ must give the opinion of a treating physician 'substantial or considerable weight unless good cause is shown to the contrary."). Notably, by December 2010, Dr. Cama no longer advised Plaintiff to avoid heavy strenuous weight lifting activities.

Finally, the ALJ took Plaintiff's complaints of pain and his history of seizures and COPD/asthma into consideration in determining Plaintiff's RFC and limited Plaintiff to only frequently stooping, never climbing ladders, avoiding all hazards, and avoiding concentrated exposure to vibrations, fumes, odors, dust, gases, and poor ventilation. Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 17th day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**